Good morning, Your Honors. I'd like to reserve two minutes for rebuttal. May it please the Court, my name is Kyla Jackson, counsel for Plaintiff Appellant Amir Cunningham. Before I begin, I would just like to note that we are going to make numerous references to the record, portions of which are under seal, and so I will do my best to make references to the record rather than explicitly state those, just to preserve Mr. Cunningham's confidentiality. Understood. Thanks. The trial court improperly dismissed Mr. Cunningham's claims that Ms. Argo, as a former warden of AMKC, was deliberately indifferent to his medical needs, his conditions of confinement, and his personal safety. The trial court accomplished this by ignoring evidence that supported Mr. Cunningham's claims, making determinations about his credibility as a witness, and resolving disputed issues of fact. But the discovery before the trial court demonstrated that Mr. Cunningham was denied access to critical medical care, in particular for previously diagnosed serious mental illnesses. He was exposed to gratuitous violence, while housed in an overcrowded receiving room without access to basic hygiene and food, and unable to file grievances for himself, his fiancée made repeated calls to 311 because she was afraid for his safety, and at least one of those complaints was relayed to Ms. Argo to act upon. Instead, Ms. Argo offered a belated and inadequate response, and left Mr. Cunningham to languish and suffer further injury. The trial court, relying on medical records produced by Ms. Argo, dismissed all evidence that supported Mr. Cunningham's version of events. The trial court effectively found that so long as the defendant can produce medical records that call into question the plaintiff's version of events, the plaintiff cannot create a triable issue of fact for summary judgment. That cannot be the standard for a plaintiff to obtain relief via Section 1983. Although Mr. Cunningham and Ms. Argo presented conflicting versions of what happened to Mr. Cunningham while he was in custody, only the trier of fact can resolve these issues. The trial court had evidence of the objective prong for Mr. Cunningham's deliberate indifference to medical needs claim. Mr. Cunningham demonstrated that he suffered from serious mental health conditions, along with other injuries. Those can be found, CJA 51 and CJA 335. Courts in this circuit have found that Mr. Cunningham did not receive medical care or his medications. He repeatedly testified that he was denied access to care and did not receive his medications. Can I shift the focus to the subjective prong for a second? So let's assume on the medical deliberate indifference claim that we say, yep, doesn't matter how many medical records say X summary judgment. He says, no, those aren't true. We accept that. And let's say that we conclude that the scenario described rises to the level of an eighth amendment deliberate indifference claim. We also have to conclude that there's sufficient evidence to impute a state of mind, a subjective willful indifference to the warden. And I'm trying to figure out what all we have is she gets his communications, his 311 complaints. She assigns somebody to investigate them. The person who investigates him says, here's the situation. Essentially, it's taken care of. Why, how can we conclude that she was deliberately indifferent on those facts? So the 311 complaint demonstrated to Ms. Agro that Mr. Cunningham was in need of immediate medical attention. It specifically laid out what his medical condition was. It identified that he needed medication. And when Ms. Agro, in her deposition, saw this 311 complaint, she testified that it would require immediate action and that the inmate be produced to medical. And she also indicated that there would need to be a formal investigation. All that happened as a result of the alleged investigation was that the captain who looked into it produced a statement with a single line on it saying that Mr. Cunningham had to sign that statement. And so if you were the superintendent, if you're the warden, and you know that someone has complained that they have mental health conditions and they don't have medication, and you've said that they have to be produced to a medical authority or a clinic, and then that doesn't happen, it's very difficult to square that away as being reasonable. She recognized, you know, that any denial of medication could be serious. And yet, when she responded, she didn't do any of the things that she outlined in her testimony. But the 311 complaint is essentially hearsay, right? It's some person from the outside saying, this is happening to the person I care about who's there. Her subordinate then goes and talks to him and says, oh, actually, essentially must be a misunderstanding. His complaint is he's got asthma and he needs to be moved. At that point, I guess the argument is it's reckless to rely on that. Is that essentially what? Yes, because she identified that someone, and very reasonably, someone who is perhaps no longer lucid in their right mind should be produced to medical because they haven't gotten their medication in X number of days. At the very least, seeing that when that statement came back and it didn't address any of the points of the complaint and the inmate refused to sign it, it's very difficult to see how it can be reasonable. Additionally, the record demonstrates that Mr. Cunningham asked Ms. McRae to make these repeated calls to 311 because he wasn't getting his medication and he needed to be housed. So with respect, I just want to briefly revisit the objective prong. He also demonstrated that he suffered a deterioration of his condition while incarcerated without his medication. Notably, he made reference to suffering from seizures, and then he also reported a host of other symptoms that can be found in the record at CJA 94 to 95, CJA 191, and CJA 228. He testified as to the lasting trauma and difficulties he's had following those experiences. But effectively, what Ms. Agro does is to say that Mr. Cunningham's medical conditions were not sufficiently serious and that any delay in treatment was minor. There's simply no evidence in the record to demonstrate either of those points. As I already said, he testified as to the deterioration of his condition, and then appellees focused on the delay being minor because he didn't have extreme degeneration, death, and pain. That effectively tries to set up an argument where if ever you were in a mental health crisis, you're never going to meet that prong because you're not in physical pain. And I don't believe that's what the test that this court has put forth is intending to do. We believe that any inmate should have equal rights to being in good physical health as they do in sound mental health. Next, we wanted to talk about the district court. Can I ask a question? Is there any evidence that the warden was involved in falsification of the medical records? I saw those as sort of separate things. There was some allegations, you say, about inconsistencies and misdemeanors and such. As I would frame it is that we're not making any claims that these were necessarily that there's a conspiracy to falsify the medical records. We simply don't know why these medical records are inaccurate, and we've pointed out a number of inconsistencies in them. We haven't alleged that Ms. Agro herself was the one who took these records and adjusted them. But with respect to the medical records, the district court found that Mr. Cunningham effectively couldn't remember his medical appointments. That's not what happened. Mr. Cunningham testified he didn't receive the medication, that he didn't see any treatment providers for those specific issues, and we also pointed out several discrepancies, as you noted. In particular, the movement log, which Ms. Agro testified tracks where an inmate is coming and going to, doesn't have him going to the clinic at any point in time between October 1 and October 15, the time when he was supposedly going back and forth for these medical visits. We also noted that one of the records said he was transferred to another facility and not produced. Mr. Cunningham was in the facility the entire time. One of the medical records was updated three months later to note that the patient wasn't seen on that date. And so we just know that there are multiple providers who contributed to these records. We don't know exactly what happened, but at the very minimum, there are inconsistencies. If I may just also address the conditions of confinement. Briefly, please. Mr. Cunningham demonstrated that his conditions of confinement were not consistent with the constitutional requirements that we see in Darnell and in Farmer. Was this post plea or was he held? Was his holding being held? Was he pre plea or post plea where he was at the facility? Based on what we've seen in the record, it was post. Okay. That he was exposed to numerous conditions that did not satisfy what is required by the Constitution. He did testify that he received inadequate food. Papelli makes note to the fact that he did at times receive food, but he also made references to the fact that sometimes he only got what they had, and that could be orange, that could be a piece of bread. He testified that he didn't have access to showers. He testified that he was subjected to numerous and repeated instances of violence. And this is something that, at the very minimum, Ms. Agarwal should have been on notice of, both because Mr. Cunningham testified he relayed some of these complaints to her when she passed through on one of her walks. We also have evidence that the complaint in the 311 call indicated that he was having a fear for safety in a fight with an officer, had also problems with gangs, and was requiring to be transferred. And so that demonstrates both the subjective prong that Ms. Agarwal, who again testified, immediate action was required in the formal investigation, yet her response did none of that. The only way that she could avoid liability would be to demonstrate that she removed him from the danger, and she did not do that. Okay. Thank you. You've reserved a few minutes for rebuttal. Good morning, and may it please the Court. Chloe Moon on behalf of Rose Agarwal. I'd like to start by clarifying what's at issue here. It's the single defendant, Rose Agarwal, now. It's not the captain, not the medical providers, not correction officers, and it's specifically related to the plaintiff's claims of deliberate indifference on the grounds of failure to provide medication. The record here conclusively establishes Agarwal's lack of deliberate indifference, making summary judgment appropriate, and this Court should affirm. Why is it unreasonable? She gets these 311 complaints. They have some pretty serious stuff in them. She sends a deputy to go check it out and comes back with a very different story. It doesn't match at all with what she thinks is going on. Not signed by anyone. Isn't that enough to put her on inquiry notice that she's got to do more or it's reckless? I don't think so, Your Honor. I think what she's aware of is this 311 complaint. She doesn't know the veracity of it. She gets it investigated, and the captain comes back with this report about this non-serious condition. It just doesn't rise to the level of deliberate indifference, which needs to be a sufficiently serious condition on that objective prompt. So there's nothing there to indicate to her that there's something serious that she should be looking into. Procedurally, can you just remind me how the, I guess it was captain, got out of it? Like, why isn't he still in the case, given these elements? I believe, I'm not actually even sure that Captain Tuccio specifically was ever included in the complaint, but all of the other defendants were dismissed by the district court. And so the only remaining defendant here is Rosagra. And so we're looking at, you know, what specifically would have provided her that personal involvement or the subjective component. And there's only two possible things. There's the brief conversation that plaintiff alleges. That brief conversation was very general about medication and housing. It doesn't provide the kind of specificity of the seriousness of a condition that would rise to providing AGRA with awareness of any kind of serious condition. And the 311 complaint, similarly, doesn't show anything specific about an excessive risk. And in response to that, she sent out people to investigate. It was investigated. And when it came back to her, she issued that formal email. And I'd just like to highlight, as this Court has already alluded to, that that subjective prong, it's a high bar to meet. It requires culpable recklessness, even if the prison official should have perceived but didn't. And I think specifically if we look at AGRA's deposition testimony, she hasn't made that inference. She hasn't drawn that connection that this 311 complaint is creating a serious condition. She says, you know, a deprivation of medication could or could not be serious, but she hasn't made that explicit inference and drawn that line, which is what's required for personal involvement. I don't want to say extraneous because there's allegations involving other conduct of the superintendent, and we're going to forget her title, but relative to similar sorts of situations. And I think it sort of suggests arguably sort of a pattern of willful disregard in these kinds of complaints. Does that move the needle at all? A, is that fair game? And B, does that move the needle? I don't think so. Here we have specifically complaints with respect to this plaintiff. And so for deliberate indifference, you have to show that AGRA specifically was aware of those excessive risks to this plaintiff. And so I don't think these other conditions, this atmospheric, really moves the needle at all for him. Well, she was aware of the length of time that people were supposed to be held in those particular cells, right, the group cells, and she was aware of a reporting requirement, because they were supposed to be held longer than three days, right? Yeah, but I'll just reiterate that the 311 complaint doesn't make clear how long he hasn't been housed. There's nothing specific there. And in any event, the 311 complaint comes in on October 8th, which is just three days after he originally gets there. So there's no indication from the 311 complaint that there's anything that she should be concerned about. Okay. Just quickly, I'd like to mention qualified immunity here. Even if you disagree on some component of this, there's nothing that's clearly established that would show AGRA was in violation of the deliberate indifference standards here, especially with Tangretti and the high bar that it is, that this Court has held to be for personal involvement. Unless the Court has any further questions, we'd ask this Court to adjourn. Thank you, counsel. Thank you. Thank you, Your Honor. So I want to start with a few points in response. One is that even if Mr. Cunningham – we understand the records are in dispute, but we would point out and highlight for the Court that there's nothing in the evidence in the record that demonstrates he ever got the medication that he requested. There's no kind of medication log. There's nothing that he signed. With respect to the other issue that was mentioned by the panel, that another inmate, Bradley Ballard, died in Ms. Agro's custody a month prior, and Mr. Ballard died after not receiving medication for a week. It took Ms. Agro an entire week to conduct the investigation that constituent service has said should happen that day. She had knowledge that if an inmate with mental health conditions is deprived of his medication for a week, it could result in serious consequences. She cannot claim that she doesn't understand the possibility that the inmate was exposed to a serious risk. With respect to the personal involvement, I think it's very clear that she retained personal involvement. This is not a case where she delegated to someone and said, you deal with this and figure it out. She said, report back to me. Captain Tuccio didn't have the ability to report to constituent services. It was Ms. Agro's office who responded. Also, with respect to the aggregate of the conditions, as it was mentioned, Mr. Cunningham stayed in the receiving room too long. The conditions there were deplorable. He was exposed to violence. The district court made nothing to understand or to look at how these conditions in the aggregate – But how is she – she has to be personally aware of that. How is she personally aware of that? Talk about the length of his stay. About the length. Well, she would have been aware that he was having problems with gangs and fights. No, no, no. That's not what I asked you. He stayed there nine – he was in the holding cell for nine days, and they were already of the understanding that they should only – that inmates should only be held there for three days at the most, and they were actually required to do some reporting with regard to that. Why is it that – how is she held to be personally aware of the fact that he was held there for nine days? She was – the 311 complaint indicated where he was being housed. I understand that, but the 311 complaint didn't make a claim that he'd been held for nine days. That's correct, but it took her a week to respond without any action in responding to it, so there was no new information provided to her to suggest that he would have been transferred to appropriate housing. All right. Okay. And then with respect to the qualified immunity point, I think it's very clear that these are well-established rights to be free of unnecessary pain and suffering, harm, deliberate conditions – sorry, deliberate indifference is obviously demonstrated here, and if not, at the very minimum, there's a question of fact that requires a remand back to the district court. Thank you, counsel. Thank you both.